**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LESLIE M. GREEN, f/k/a
LESLIE MARIE WALLACE,
       Plaintiff,                          CIVIL ACTION NO. 07-12787

     vs.                                DISTRICT JUDGE THOMAS L. LUDINGTON

                                          MAGISTRATE JUDGE MONA K. MAJZOUB
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Summary Judgment (Docket no. 20) be DENIED, that of Defendant (Docket no. 12) DENIED, and the case be remanded for further proceedings consistent with this Report.

\*\*\*

Plaintiff filed an application for Disability and Disability Insurance Benefits on March 25, 2003 alleging that she had been disabled and unable to work since June 15, 2002 as a result of a lower back injury. (TR 51-53, 58). On March 31, 2003 Plaintiff submitted a claim for Supplemental Security Income. (TR 54). The Social Security Administration denied benefits. (TR 29-33). A requested *de novo* hearing was held on June 22, 2005 before Administrative Law Judge (ALJ) Neil White. (TR 17-23, 305). The ALJ subsequently found that the claimant was not entitled to a period of disability, Disability Insurance Benefits or Supplemental Security Income because she was not under a disability at any time through the date of the ALJ's July 27, 2005 decision. (TR 23). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 5-7). The parties filed Motions for Summary Judgment and Plaintiff filed

a Reply brief. The issue Plaintiff raises for review is whether the ALJ's decision is supported by substantial evidence.

Plaintiff was 25 years old at the time of the administrative hearing. (TR 308). Plaintiff has a high school education with one additional year of college and employment experience working at a theater, as an assistant manager in a fast food restaurant, as a cashier and working in housekeeping and laundry at a hospital. (TR 64, 308, 312-13). Plaintiff suffered an injury at work on February 15, 2002 when she was lifting a heavy bag of wet towels from a hamper and felt a severe pain in her lower back. (TR 58, 60, 309). Plaintiff won her worker's compensation case which was on appeal at the time of the hearing. (TR 310).

Plaintiff testified that the pain in her lower back often prevents her from leaving the house. (TR 314). She described her pain as moderate on average, never mild, and occasionally severe. (TR 314-15). When the pain is severe she lies down or changes position. (TR 95, 315). Plaintiff testified that she lies down two to three times a day and gets sore from sitting in one place. (TR 317). She takes Ultracet and Flexeril. (TR 315). She testified that she not had "a whole lot of improvement" from the medications but they help her fall asleep easier. (TR 98, 315-16). She continues to have trouble staying asleep. (TR 98, 315-16). Plaintiff testified that at the time of the hearing she had been undergoing decompression therapy on a traction machine. (TR 310).

Plaintiff testified that about twice a week the pain radiates from her back into her left leg. (TR 95, 317). Plaintiff can walk and testified that it is more comfortable than sitting or standing. (TR 97, 317). She can also drive a car but does not usually drive more than twenty minutes at a time. (TR 318). Plaintiff was able to drive without stopping from Midland to Flint for the hearing. (TR 318). Plaintiff takes care of her fiance's four year old child and feeds him and gets him his

clothing. (TR 319). The child is in preschool and summer camp during the day and Plaintiff receives some assistance from others to take care of him. (TR 72, 319). Plaintiff is able to perform household tasks such as washing dishes and doing one or two loads of laundry a day. (TR 320). Plaintiff testified that the laundry facilities are not on her main floor and she does not have trouble going up and down the steps to the basement. (TR 320). Plaintiff has assistance from her boyfriend with other household chores including vacuuming and washing floors. (TR 72, 99, 321). Plaintiff does her own grocery shopping in short, frequent trips, otherwise she describes that it "gets to be too much" for her. (TR 320). Before Plaintiff's injury she used to bike ride, roller blade and shop for fun. (TR 322). Since the injury she just reads or watches television. (TR 322). Plaintiff testified that she also suffers from depression, which she characterized as "more like frustration," asthma and Raynaud's syndrome and that none of these conditions has prevented her from working. (TR 325). After her injury, Plaintiff's employer created jobs for her to do within four-hour time periods for approximately two weeks at a time. (TR 326). Plaintiff testified that she had difficulty with those jobs because she was "very, very sore" after working and would sleep for the remainder of the day. (TR 327). Her former employer eventually stopped giving her work. (TR 313, 326).

### *Medical Evidence*

In February 2002 Plaintiff was treated at Mid Michigan Urgent Care for her back pain. (TR 185). On February 18, 2002 Plaintiff was restricted to lifting, pushing and pulling no more than ten pounds, must be allowed to frequently change position and sit or stand as needed and should avoid bending, twisting, overhead work, squatting, kneeling, climbing stairs and ladders and pivoting with weight. (TR 189, 207). On February 28, 2002 Plaintiff was restricted to light duty for four hours per day and physical therapy was prescribed. (TR 185, 189).

3

Plaintiff treated with John A. Szajenko, M.D., physiatrist, on March 7, 2002 following her work injury on February 15, 2002. (TR 182). Left hip flexor muscle testing provoked discomfort in the left lower back; testing on the right hip flexor provoked discomfort to a lesser degree. (TR 181). Plaintiff had "excellent" range of motion in the major joints and had only mild palpable low lumbar spine tenderness. (TR 181). Left FABER testing was uncomfortable and provoked left sided lower back pain, as did straight leg raising on the left. (TR 181). Plaintiff's gait was normal. (TR 181). Naproxen was providing significant benefit. (TR 181). Dr. Szajenko diagnosed low back pain with sacroilitis and noted that Plaintiff reported benefitting from physical therapy. (TR 181). The doctor discussed the possibility of sacroiliac joint injection if Plaintiff did not show significant improvement. (TR 181).

On March 21, 2002 Plaintiff reported feeling quite a bit better, using the Naproxyn only once per day and sleeping better despite only minimal or no use of Zanaflex. (TR 181). On April 10, 2002 Plaintiff reported that her pain symptoms became significantly worse following a massage treatment she received at her physical therapy session. (TR 180). Plaintiff was continuing to work with restrictions, including four hours of work per day and no lifting over ten pounds. (TR 180, 182). The doctor noted that based on Plaintiff's "lack of progress" they would proceed with the LT SI joint injection. (TR 179). On April 17, 2008 Dr. Szajenko noted that Plaintiff had "some significant improvement from the last SI joint injection." (TR 179). Plaintiff reported her pain at about 2.5 on a scale of ten. (TR 179). Plaintiff had marked sacroiliac joint tenderness and mild lumbar spine tenderness to palpation. (TR 179-78). Plaintiff underwent joint injections at the LT SI joint again on April 17, 2008. (TR 178). Dr. Szajenko was "hopeful" that she could return to less restricted work. (TR 178).

4

An April 25, 2002 MRI of the lumbar spine showed mild/early disk degenerative changes at L2-L3 and L5-S1 levels with no focal disk herniation, spinal canal or foraminal stenosis. (TR 177). A central degenerative annular fissuring or tear was present at L5-S1 with a mild symmetrical bulge but no focal herniation. (TR 177). On April 29, 2002 Dr. Szakenko prescribed a series of epidurals for Plaintiff due to a recent lack of improvement. (TR 176). Plaintiff underwent left L5-S1 transforaminal epidural steroid injections on May 22 and 29 and June 5, 2002. (TR 172-74). In June 2002 Plaintiff reported that the epidural injections did not help her low back pain and she resumed Naprosyn, which provided some relief. (TR 171). In August 2002 Dr. Szakenko noted that he had not seen Plaintiff in a couple of months because her worker's comp was no longer covering any treatment. (TR 170). As a result, she was also off all medications and continued to have back pain, which she reported as a four on a scale of ten. (TR 170). Dr. Szajenko provided Plaintiff with samples of Zanaflex. (TR 169). Plaintiff was also not undergoing physical therapy and the doctor noted that the physical therapy chart showed a problem with Plaintiff's compliance prior to the worker's comp dispute. (TR 170). The doctor rewrote her work restrictions to increase lifting to twenty pounds. (TR 169). On September 16, 2002 the doctor released her to unrestricted work except for a limit to six hours a day. (TR 167). On October 30, 2002 Dr. Szajenko noted that he changed Plaintiff's work restriction and decreased her hours back to four hours per day because Plaintiff reported that she was unable to tolerate six hours of work per shift. (TR 167). She reported that after four hours she had shooting pains down her left leg. (TR 167).

On November 19, 2002 Plaintiff underwent an occupational therapy assessment. (TR 163-66). George Palm, O.T.R., concluded that Plaintiff performed at a sedentary physical demand level during the evaluation but he was 'not convinced that she demonstrated her maximum capabilities.'

5

(TR 166). On November 27, 2002 Dr. Szajenko opined that because Plaintiff had been able to tolerate four hours of work per day, he would continue with the prior restriction rather than lowering it to sedentary level work. (TR 160). Plaintiff again reported that her therapies were not covered by insurance. (TR 160). Plaintiff's condition remained unchanged on January 9, 2003. (TR 160). Dr. Szajenko had recommended a discogram and Plaintiff reported that she was "too scared" to pursue it. (TR 160).

A Physical Residual Functional Capacity Assessment dated July 9, 2003 concluded that Plaintiff could occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday and was unlimited in ability to push and/or pull except as limited in lifting. (TR 127). Plaintiff should only occasionally balance, stoop, kneel, crouch, crawl or climb ramps or stairs and never climb ladders, ropes or scaffolds. (TR 126-33).

Douglas F. Geiger, M.D. examined Plaintiff on February 11, 2003 at Dr. Szajenko's request for a consultation. (TR 213). Dr. Geiger noted that x-rays of the lumbar spine showed mild disc space narrowing at the L5-S1 level, and fairly good maintenance of the lumbar lordosis. (TR 213). An MRI showed "evidence of a high intensity signal area in the posterior aspect of the annulus of L5." (TR 214). There was "no neurological impingement, no actual disc herniation and no other significant abnormalities noted." (TR 214). On February 28, 2003 Plaintiff underwent a lumbar diskography at L4-5 and L5-S1 with Dr. Geiger. (TR 209). The diskography showed degenerative disk disease at L5-S1 and concordant pain at that level. (TR 209, 211). Dr. Geiger, through his colleague Donna J. Huelke, M.S., P.A.-C., offered Plaintiff the opportunity to participate in a Pro Disc Artificial Disc Replacement FDA Investigative Study wherein two of three participants would

receive an artificial disk replacement and the one participant would receive an anterior and posterior fusion. (TR 212). Ms. Huelke noted that Plaintiff "has work comp issues that she is trying to resolve." (TR 212).

Plaintiff attended physical therapy from February 25, 2002 through May 7, 2002. (TR 134-59). In April 2002 the physical therapist noted the Plaintiff "continues to make slow progress." (TR 142). The therapist noted increased function because Plaintiff was able to squat but with difficulty. (TR 142). On April 1, 2002 Plaintiff reported being sore after working all day and having a busy weekend. (TR 149). She again reported being sore on April 2, 2002 after sleeping on her couch the night before. (TR 149). On April 15, 2002 Plaintiff reported that she has pain when bending forward but was feeling better overall. (TR 146). On April 16, 2002 the physical therapist noted that Plaintiff stated that her back was feeling better and she was taking her medication on a less frequent basis. (TR 145). On April 22, 2002 Plaintiff complained that her back was "stiff" from completing hours of housework although the therapist noted that Plaintiff seemed less sore than usual. (TR 144). In May 2002 Plaintiff complained of leg fatigue but it was noted that she tolerated her therapies well. (TR 140-41).

Plaintiff underwent a medical exam with Marvin Bleiberg, M.D., on October 8, 2003. (TR 216-20). Dr. Bleiberg reported that Plaintiff had not received any treatment since March 2003 because her insurance company had cut off her benefits. (TR 216). Plaintiff reported that her pain was usually a six on a scale of ten. (TR 216). At best it was a four and at worst it was a 9 of ten. (TR 216). Dr. Bleiberg reported that range of motion of the cervical spine was within functional limits in all planes without pain complaints, range of motion in the lumbar spine was limited by approximately 50% in extension and 25% in flexion. (TR 217). Sidebending and rotation were

within functional limits. (TR 217). Dr. Bleiberg diagnosed L5-S1 discogenic pain, lumbar sprain, possible lumbar facet syndrome and chronic lumbago. (TR 219). He recommended that she be managed by a conservative musculoskeletal physician. (TR 219). He also recommended a trial of diagnostic medial branch blockers/facet joint injections due to her worsened pain with lumbar extensions. (TR 219). Dr. Bleiberg disagreed with the recommendation that Plaintiff undergo surgery. (TR 219). Dr. Bleiberg was especially concerned about the disk replacement under investigational study. (TR 219). Dr. Bleiberg opined that Plaintiff could return to work, but she required the following restrictions: full time work, no lifting, pushing or pulling greater than ten pounds, no bending backwards, forward, or twisting at the low back except on rare occasion as absolutely necessary, able to alternate sitting, standing, walking and lying down as needed, no kneeling, stooping or crouching except on a rare basis when absolutely necessary and the duration of the limitations was noted as "until clinical improvement." (TR 220).

### *Vocational Expert*

The Vocational Expert (VE) classified Plaintiff's prior work as a cook and cashier as medium and unskilled. (TR 327). Her prior work as a cashier is light and unskilled, the assistant manager position is medium and semi-skilled and the housekeeper position is heavy and unskilled. (TR 328). The ALJ asked the VE to consider a hypothetical individual of the same age with the same education and background as Plaintiff, who is limited to lifting ten pounds, cannot bend backward or forward, cannot twist at the low back except on rare occasions, needs a sit/stand option, and can only rarely kneel, stoop or crouch. (TR 328). The VE testified that such an individual could not perform Plaintiff's past relevant work. (TR 328). The VE testified that such an individual could perform other jobs in the economy that would be sedentary and unskilled such as cashier (a reduced

number of 6,000 available in the lower peninsula of Michigan), order/checker clerk (2,100 in the lower peninsula of Michigan and assembler (reduced number of 4,500 in the lower peninsula of Michigan). (TR 328). The VE testified that the need to lie down in a prone position at unpredictable times and for unpredictable lengths of time would preclude work. (TR 328). The VE further testified that more than one absence per month would generally preclude these jobs. (TR 329).

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION:**

The ALJ found that although Plaintiff met the disability insured status requirements through the date of the decision, has not engaged in substantial gainful activity since June 15, 2002 and suffered from degenerative disc disease of the lumbar spine, a severe impairment, she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 22). The ALJ found Plaintiff's statements concerning her limitations were not entirely credible, her exertional and non-exertional limitations allow her to perform less than the full range of sedentary work, and concluded that she was capable of performing a significant number of jobs in the economy. (TR 23). Therefore she was not suffering from a disability under the Social Security Act. (TR 23).

**STANDARD OF REVIEW:**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it

is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**DISCUSSION AND ANALYSIS:**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) she was not presently engaged in substantial gainful employment; and

(2) she suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from

doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff alleges that the ALJ made an improper credibility determination not supported by substantial evidence, disregarded the opinion of Plaintiff's orthopaedic surgeon and confused degenerative disc disease with annular tears. Plaintiff also alleges that the ALJ presented an inaccurate hypothetical question to the VE, therefore the VE's testimony does not constitute substantial evidence.

***Consideration Of New Evidence***

Plaintiff submitted two deposition transcripts to the Appeals Council. *See* Bleiberg Tr. of 10/29/03 and 12/1/05. (TR 228-51, 261-304). Plaintiff argues that the Appeals Council erred in failing to consider Dr. Bleiberg's October 29, 2003 and December 12, 2005 deposition transcripts. (TR 261-304). Plaintiff provides no legal support for this assertion. The December 12, 2005 transcript is dated after the ALJ's most recent decision and the October 29, 2003 transcript was provided to the Appeals Council but was not before the ALJ. (TR 5-7, 221, 228-51, 261-304)

11

Regarding the issue of new evidence, the "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)).

As set forth above, Plaintiff has offered no explanation for why the depositions were not provided at the hearing on June 22, 2005. *See Willis v. Sec'ty of Health and Humans Servs.*, 727 F.2d at 554. Neither the record nor Plaintiff's pleadings show good cause for Plaintiff's failure to provide the October 2003 deposition or to take and provide the second deposition of Dr. Bleiberg

12

prior to the close of the proceedings before the ALJ. Plaintiff offered no explanation as to how this evidence is material. The October 2003 transcript addresses the same diagnoses that Dr. Bleiberg made in the October 8, 2003 report and reiterates his opinion that surgical intervention was unreasonable. (TR 216-20). Similarly, the December 2005 transcript references discogenic pain at L5-S1 as already set forth in evidence before the court. The December 2005 transcript is also consistent with Dr. Bleiberg's October 8, 2003 examination. It does not constitute new and material evidence and to the extent it shows deterioration of Plaintiff's condition, "[e]vidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (*citing Sizemore*, 865 F.2d at 712).

Plaintiff has not shown "good cause" for failing to provide the transcripts earlier. *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The Court does not find that the document transcripts are new or material. Therefore, the Court will deny Plaintiff's request to remand this case for consideration of the December 1, 2005 deposition transcripts[1].

## *Plaintiff's Credibility*

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.* An ALJ's credibility determination must contain "specific reasons .

---

[1] In her prayer for relief, Plaintiff asks the Court to remand for consideration of Dr. Bleiberg's "second deposition." The Court denies Plaintiff's request for remand with respect to both transcripts.

13

. . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

To the extent the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ states in the body of his decision that he finds "the testimony regarding the claimant's subjective complaints as not substantially credible based on the objective medical evidence provided by treating physicians." (TR 21). He also states that "[t]he undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." (TR 22). The ALJ's does not otherwise address Plaintiff's credibility in his decision. The Court cannot assume that the ALJ found none of Plaintiff's allegations

credible[2]. "While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. Most importantly he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The ALJ's decision shows no analysis of Plaintiff credibility. Without further specificity by the ALJ, the Court cannot determine whether the ALJ's credibility finding is based on substantial evidence.

The credibility of Plaintiff's statements has significant ramifications. Plaintiff testified that she needs to lie down two to three times per day to relieve pain. (TR 317). Further, this statement is consistent with Dr. Bleiberg's opinion that Plaintiff needs to be able to sit, stand, walk and lie down as needed. (TR 220). The VE testified that the jobs which were available based on the ALJ's hypothetical questions would be precluded if the individual needed to "lie down in a prone position at unpredictable times for an unpredictable length of time during the day." (TR 328). The case must be remanded so that the ALJ may conduct a re-assessment of Plaintiff's credibility, specifically

---

[2] The ALJ pointed out several times in his decision that Plaintiff sought "essentially no treatment" after 2003. (TR 20, 21). This alone is not a basis for discounting Plaintiff's credibility, in light of evidence that Plaintiff did not have medical insurance during this time. "An ALJ 'must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering . . . information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment,' such as '[t]he individuals (sic) [inability] to afford treatment [or obtain] access to free or low-cost medical services.' Soc. Sec. Reg. 96-7p." *Blakeman v. Astrue*, 509 F.3d 878, 888 (8th Cir. 2007). Plaintiff testified at the hearing in 2005 that by the time Dr. Geiger recommended a disc replacement surgery, worker's compensation had stopped paying Plaintiff's benefits. At the time of the hearing Plaintiff had won the worker's compensation case, it was on appeal and she had not yet received her accrued benefits. (TR 310). In August 2002 Dr. Szajenko reported that he had not seen Plaintiff in a couple of months because her worker's comp claim was in dispute and she was off all medication because worker's comp was "no longer covering her treatment at all." (TR 170). The ALJ did not address the evidence and testimony alleging that Plaintiff had no medical coverage during this time.

citing which of Plaintiff's claims are or are not credited, including Plaintiff's pain allegations and the need to lie down, and the evidentiary basis for the ALJ's conclusions. Thereafter, the ALJ should: (1) specifically state whether Plaintiff's credible complaints affect the RFC finding and the reasons for those decisions; and (2) conduct a new step four analysis if otherwise appropriate and proceed to a step five analysis if necessary. If the ALJ reaches a step five determination on remand, the hypothetical question to the VE must incorporate the limitations the ALJ accepts as credible and supported by the record. *See Casey v. Sec'y of Health and Human Serv.,* 987 F.2d 1230, 1235 (6th Cir. 1993).

***Whether the ALJ Disregarded the Opinion of Plaintiff's Orthopaedic Surgeon and Properly Considered Plaintiff's Annular Tear***

Plaintiff argues that the ALJ disregarded the opinion of her orthopaedic surgeon, Dr. Geiger, that she was wholly disabled from engaging in any employment prior to undergoing low back surgery. (Docket no. 20, Pl's Br. at 13). Dr. Geiger stated that Plaintiff "currently is unable to work because of her chronic low back pain." (Docket no. 20, Pl's Br. at 7, *citing* TR 211). Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Apfel*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e). Therefore, the ALJ did not err in failing to adopt any physician's or treating source's designation of Plaintiff as "disabled" or unable to work, including Dr. Geiger's conclusion.

It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable

16

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30.

If an ALJ rejects a treating physician's opinion, he must "give good reasons" for doing so in his written opinion. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also* SSR 96-5p and 96-2p. Furthermore, the Sixth Circuit has noted that the ALJ must provide good reasons for the weight given a treating source's opinion. *Wilson v. Comm'r of Social Sec'ty*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (*citing* SSR 96-2p, 1996 WL 374188, at *5).

The ALJ gave good reasons for failing to give Dr. Geiger's opinion controlling weight and specifically pointed out where it was inconsistent with other record evidence. (TR 20-21). First, the objective medical evidence in the record, including MRI's and x-rays, showed mild to moderate findings with regard to Plaintiff's lower back. (TR 177, 213-14). Further, the Court agrees that Dr. Bleiberg's findings indicated a greater level of functioning than Dr. Geiger concluded. (TR 220). Dr. Szajenko also noted a higher level of functioning than Dr. Geiger noted. (TR 167, 169). Finally, substantial evidence supports the ALJ's conclusion that Plaintiff's condition remained stable. In relying on Dr. Bleiberg's opinion, however, the ALJ failed to address Dr. Bleiberg's opinion that Plaintiff must be able to alternate to a lying down position. This opinion is consistent with Plaintiff's testimony regarding the same. Because the ALJ failed to engage in a proper analysis of the credibility of Plaintiff's statements and did not address Dr. Bleiberg's opinion on this issue, the

ALJ's RFC is not supported by substantial evidence. The case should be remanded so the ALJ can address the alleged need for Plaintiff to be able to alternate to lying down as she changes position. If it is found that Plaintiff's RFC contains this limitation, the ALJ can find Plaintiff disabled based on the VE's prior testimony that such a limitation would preclude jobs. To the extent that there are further changes to Plaintiff's RFC that are no longer encompassed in the prior hypothetical questions to the VE, the ALJ must perform a new step five analysis.

Plaintiff argues that the ALJ confused degenerative disc disease with annular tears. The first objective medical evidence of this condition is in the April 25, 2002 MRI ordered by Dr. Szajenko. (TR 177). The ALJ references this MRI. (TR 19-20). Dr. Szajenko's resulting diagnosis was "mild/early disk degenerative changes at L2-L3 and L5-S1 levels," with "[n]o focal disk herniation, spinal canal, or foraminal stenosis." The ALJ considered this evidence and relied on the treating physicians' diagnoses. *See Hoelck v. Comm'r of Social Sec.*, 2008 WL 64705 (5th Cir. Jan. 7, 2008) (citing extensively to that medical visit suggested that the ALJ considered it.). The Court finds that the ALJ properly considered the evidence regarding the annular tear and the resulting limitations and symptoms were encompassed in the evidence of record and cited by the ALJ in his discussion of Plaintiff's lower back condition[3].

Finally, Plaintiff argues that the ALJ failed to meet his burden at step five to show that there is other work in the economy which Plaintiff can perform. Plaintiff argues that the RFC did not include all of Plaintiff's limitations, including that of alternating to a lying down position, and

---

[3] The Court notes that Plaintiff's Reply Brief which addresses this issue exceeds the five page limit for a reply brief. E.D.Mich. LR 7.1. (Docket no. 13). The exhibit to the Reply Brief, a multiple page excerpt from the Wikipedia website on "Spinal Disc Herniation," is not medical evidence before this Court, nor was it evidence before the ALJ. (Docket no. 13-2).

therefore the hypothetical question to the VE was incomplete. The Court need not reach this issue because the case will be remanded for further consideration of the issues set forth above. The Court cannot find that the ALJ's RFC was based on substantial evidence in light of the improper credibility determination and failure to properly consider Dr. Bleiberg's opinion that Plaintiff needs to alternate to a lying down position.

**RECOMMENDATION:**

The Commissioner's decision is not supported by substantial evidence. The Defendant's Motion for Summary Judgement should be denied, Plaintiff's Motion for Summary Judgment should be denied, and the case remanded for further proceedings.

**REVIEW OF REPORT AND RECOMMENDATION:**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 26, 2008              s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 26, 2008              s/ Lisa C. Bartlett
                                    Courtroom Deputy